UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-80-GWU

WILLIAM HOWARD BLEVINS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, William Howard Blevins, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of low back pain status post fusion in October, 2006. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Blevins retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 17-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE a series of hypothetical questions, one of which encompassed the ultimate determination that the plaintiff, a 42-year-old man with a high school equivalency diploma and no more than semi-skilled work experience, was capable of performing light level exertion with no climbing or crawling, occasional stooping, bending, and crouching, and had a need to alternate sitting and standing at 30-minute intervals. (Tr. 41-2).[1] The VE responded that there were jobs that such a person could perform, and proceeded

---

[1] The hypothetical factors also included a need to avoid concentrated exposure to vibration, vibratory equipment, unprotected heights, and hazardous machinery (Tr. 40), which was not included in the ALJ's ultimate finding (Tr. 17).

to give the numbers in which they existed in the state and national economies. (Tr. 42).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence. The court concludes that they are not.

Mr. Blevins alleged disability beginning January 1, 2008 due to physical restrictions resulting from lower back surgery, which had involved the removal of two discs, the fusion of three vertebrae, and the addition of "two rods and four screws." (Tr. 146). At the administrative hearing, Mr. Blevins testified that he had back problems starting in 2000 or 2001, which had eventually required the surgery to be performed in October, 2006. (Tr. 29, 33). He felt that the surgery had made him worse. He had continued to work as a truck driver and laborer, delivering building supplies, until October, 2007. (Tr. 26-7). He had needed help doing much of his work. (Tr. 27). He testified that he now spent most of his time in a recliner, and his activities were limited to a few items such as taking laundry up and down stairs and tending to five rose bushes, but even these activities made his back hurt, with radiation of pain down the left leg and hip. (Tr. 30-1, 37). He had not seen his neurosurgeon, Dr. El-Naggar, since January, 2007 and was being treated by a family physician, Dr. Robert Drake, every three months. (Tr. 29, 32).

Medical records in the transcript show that Dr. Drake began treating the plaintiff for back problems well before he stopped working, at least as early as June, 2000. (Tr. 392). Dr. Drake referred his patient to Dr. Amr O. El-Naggar in October, 2006 for evaluation of low back, left hip and leg pain. (Tr. 265). Dr. El-Naggar's examination at that time showed that Mr. Blevins was largely neurologically intact, although he was in mild distress from pain. (Id.). The neurosurgeon reviewed an MRI of the lumbar spine dated February 7, 2006 which showed an "annular rent" at L4-5 and L5-S1 with disc dessication at both levels and mild loss of disc height at L4-5. (Tr. 265-6, 279). Dr. El-Naggar decided to proceed with surgery and fusion, which was described as a left lumbar 4-5 and 5-1 posterior lumbar interbody fusion with PEEK PR cages, percutaneous pedicle screws and rods with bone morphogenic protein. (Tr. 259).

Dr. El-Naggar saw his patient in follow-up on two occasions. On November 27, 2006, the patient noted improvement and stated that he wanted to go back to work driving a truck, a job that involved some lifting. (Tr. 285). Dr. El-Naggar opined that it was somewhat early to go back to work but at the plaintiff's insistence, he allowed it with a 20 pound lifting restriction pending further evaluation. (Id.). On January 11, 2007, Dr. El-Naggar reviewed a CT scan showing evidence of a good ongoing fusion, and allowed Mr. Blevins to discontinue using his corset, which he

was wearing mainly at work. (Tr. 284). He was again instructed not to lift more than 20 pounds. (Id.).

Following the surgery, Dr. Drake's office notes indicate that Mr. Blevins was seen in 2007 with continuing complaints of back pain and stiffness, which required the continuing prescription of Lorcet Plus or Lortab. (Tr. 368-70). By early in 2008, it was noted that Mr. Blevins was no longer working and continued to have numbness in his left leg, although he was following the doctor's instructions to walk daily. (Tr. 366-7).

Dr. Martin Fritzhand conducted a consultative physical examination on April 16, 2008 and reviewed Dr. El-Naggar's notes. (Tr. 323). He noted that the plaintiff was obese and had a completely normal neurological examination except for absent patellar and Achilles tendon reflexes bilaterally. (Tr. 324). He had slight difficulty bending forward at the waist to 85 degrees and could stand on either leg. Dr. Fritzhand did not prepare a formal residual functional capacity assessment but opined that Mr. Blevins appeared capable of performing "at least a mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects." (Tr. 325).

A non-medical state agency reviewer, Joe Karsner, completed a physical residual functional capacity assessment at this point and concluded that Mr. Blevins was capable of performing lifting of up to 50 pounds occasionally and 25 pounds

frequently, with no climbing of ladders, ropes, or scaffolds and occasional stooping and crawling. (Tr. 315-21). However, he appeared to base his opinion primarily on Dr. Fritzhand's report, which he erroneously described as containing a conclusion that Mr. Blevins could perform at least a "moderate amount" of the physical activities previously mentioned in the discussion of Dr. Fritzhand's report. (Tr. 320). A state agency physician, Dr. Humildad T. Anzures, largely agreed with the Karsner assessment in a subsequent form, although he revised the postural limitations to occasional stooping, crouching, and crawling and added a need to avoid concentrated exposure to vibration and hazards. (Tr. 330-6). He provided no explanation of the reasons for the changes or what medical evidence he considered.

Well after Dr. Anzures rendered his opinion, which was reflected in the ALJ's ultimate residual functional capacity finding, the plaintiff submitted office notes from Dr. Drake, and later still submitted a residual functional capacity questionnaire in which Dr. Drake stated that his patient could occasionally lift up to 20 pounds and "never/rarely" up to 100 pounds, but would be limited to walking, standing, and sitting one hour or less in an eight-hour day, would need to alternate his position at will, could "never/rarely" bend, squat, crawl, climb, stoop, kneel, or balance, had restrictions on operating automotive equipment for an extended time, working around coal, and using his left foot and leg for repetitive movements. (Tr. 396-7).

He felt that his patient's pain would be severe enough to "frequently" interfere with attention and concentration. (Tr. 397).

      The ALJ rejected Dr. Drake's restrictions in a brief section of his decision which implied that it was inconsistent with Dr. El-Naggar's post-operative restriction of not lifting more than 20 pounds and with Dr. Drake's own notation in July, 2008 that Mr. Blevins should do no heavy lifting. (Tr. 19). Since Dr. Drake's form does say that the plaintiff can occasionally lift up to 20 pounds, it is not facially inconsistent. Moreover, Dr. El-Naggar's lifting restriction was given reluctantly in the context of the plaintiff's insistence on returning to work. It is at least somewhat questionable whether he felt, at that point, that the plaintiff, who had gone back to work even before his lumbar corset was removed, should be lifting to that extent. In fact, the ALJ appears to have given little consideration to the fact that Mr. Blevins attempted to return to work for approximately a year after his surgery, and only quit when he was unable to continue.

      The ALJ apparently also gave weight to Dr. Fritzhand's conclusions that the plaintiff was capable of performing at least a mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects, although noting in the next sentence that the Commissioner's regulations at 20 C.F.R. §§ 404.1545 and 416.945 define residual functional capacity assessment as involving the maximum a person can do, not the least they can do. While in context, the ALJ

appears to be crediting Dr. Fritzhand's restrictions as being consistent with those of Dr. El-Naggar, the citation to these sections of the regulations implies that his opinion was compromised by the manner in which it was rendered, creating a confusing situation for a reviewing court.

The Sixth Circuit Court of Appeals has warned repeatedly that the Commissioner's own regulations require that he give "good reasons" for discounting the opinion of a treating physician.  Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004), citing 20 C.F.R. § 404.1527(d)(2).  "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors–namely, the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source–in determining what weight to give the opinion." Id. at 544.  The opinion of the treating physician is entitled to great deference even if it is not given controlling weight.  Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

In the present case, the ALJ implicitly attacked the supportability of Dr. Drake's opinion and its consistency with the record as a whole.  However, as previously noted, the reasons given for the inconsistency are not particularly persuasive. Moreover, the only definitive opinions other than Dr. Drake's were from the non-medical state agency reviewer, who misquoted Dr. Fritzhand's report, and

Dr. Anzures, who specifically based his conclusions on that report and made alterations based on a review of unspecified additional evidence. Under the circumstances, this court has no difficulty concluding that the ALJ has failed to provide good reasons for not accepting the opinion of Dr. Drake.

The case will be remanded for further consideration.

This the 3rd day of November, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**